Jay Stejn (SBN 141042)
FINESTONE & RICHTER
A Professional Corporation
1875 Century Park East, Suite 1500
Los Angeles, California 90067-2516
Telephone: (310) 575-0800
Facsimile: (310) 575-0170
(jstein@frlawcorp.com)

Attorneys for Biotab, Biotab Nutraceuticals, Inc.

FILED
CLERK, U.S. DISTRICT COURT
DEC - 9 2011
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOTAB NUTRACEUTICALS, INC., a California corporation,<br><br>Biotab,<br><br>vs.<br><br>BEAMONSTAR, LLC, an Arizona limited liability company; JEFF BOLANOS, an individual dba BEAMONSTAR; BEAMONSTAR PRODUCTS, INC., an Arizona corporation; and DOES 1 through 5, inclusive,<br><br>Defendants. | Case No.: CV10 5335 SVW (JEMx)<br><br>[Proposed]<br><br>ORDER FOR ENTRY OF JUDGMENT |

Good cause appearing therefor, the Court makes the following order:

FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court finds and concludes that Defendants Beamonstar, LLC ("Beamonstar"), Jeffrey Levi Bolanos ("Bolanos"), and Beamonstar Products, Inc. ("BPI"), jointly and severally, committed violations of: 15 USC 1114(1); 15 USC 1125(a); 15 USC 1125(c); 19USC 1202, et seq., and particularly Section 1526(a) of said Act; 18 USC 1961, et seq.,

and particularly Sections 1962(b), 1962(c), and 1962(d); Fraud and Deceit; and, Intentional Interference with Actual and Prospective Economic Advantage.

The most material facts supporting such conclusions include:

A. In or about 1999, Biotab Nutraceuticals, Inc. ("Biotab") and/or Biotab's predecessor in interest and affiliates developed a dietary or vitamin supplement essentially promoting male sexual enhancement, which product became known in commerce as "ExtenZe." (A similar dietary supplement marketed for women and other related goods were subsequently introduced into the marketplace by Biotab using the same trademark brand, "ExtenZe.") On July 18, 2007, Biotab sought from the United States Patent and Trademark Office ("USPTO") formal registration for the trademark, ExtenZe®, alleging its first use in commerce as being November 1999. The USPTO entered the mark in its principal register on March 25, 2008, as Registration Number 3401265. As a result of said registration, Biotab is entitled to the exclusive use of said trademark in commerce on or in connection with the goods specified in the Registration, as provided for by 15 USC 1115.

B. Since ExtenZe's® entry into the market, Biotab and/or its predecessors, affiliates and agents marketed supplement products extensively to the general public, nationally and internationally, including by way of television, print and internet media advertising. Biotab's ExtenZe® products are sold through telephone sales, internet sales, mail order, wholesale sales, and retail store sales, including retail sales through several national and international chain retailers. Biotab also owns the rights to the internet domain name, extenze.com, and uses that domain name to market and sell its ExtenZe® products. As a result of Biotab's extensive and long-term marketing of the ExtenZe®

products, Biotab has created such a strong mark in Extenze® that the mark is widely recognized by consumers, that it is widely recognized as being associated with products related to sexual enhancement, and that it points uniquely and unmistakably to Biotab. As a result, the ExtenZe® mark is a "famous" mark, as that term is used in trademark law.

C. At the times relevant to this action, Defendants operated businesses of three different business forms – a sole proprietorship of Bolanos known as "Beamonstar" or "Beamonstar Products;" an Arizona limited liability company known as "Beamonstar, LLC" (dissolved April 5, 2010); and an Arizona corporation known as "Beamonstar Products, Inc." (incorporated September 7, 2010) However, each of these was actually the same business, operating the same commercial activities continuously, with common ownership. There was no sale and purchase of one entity's assets to the next entity, merely *inter se* transfers of assets, operations, vendor relationships, customer accounts, liabilities, etc., with the commingling of monies and assets. The shifting of business operations and assets from one entity or person to another in this fashion amounts to fraudulent transfers, as defined in California Civil Code Section 1227 and as proscribed by California Civil Code Section 3439, et seq. Accordingly, for purposes of analyzing legal liabilities arising from the conduct of these businesses, they may be treated as one continuing business.

D. Defendants Beamonstar and BPI were each the alter ego of Defendant Bolanos. There exists, and at all times relevant to this action there existed, a unity of interest and ownership between said Defendants such that any separateness between them has ceased to exist, in that Defendants Bolanos completely controlled, dominated,

managed, and operated the corporate defendants and intermingled the assets of each to suit the convenience of Defendant Bolanos.

E. During the times relevant to this action, Defendants Beamonstar, Bolanos and BPI have maintained a premises from which it engaged in business in Whittier, California, they conducted business in California, some of the wrongful conduct engaged in by Defendants occurred with the geographic jurisdiction of the Central District of California, and some of these Defendants' fellow wrongdoers were located in California. As a result, this Court has personal jurisdiction over the Defendants.

F. On multiple occasions until October 2009, Defendants Beamonstar and Bolanos purchased from Biotab some of Biotab's goods bearing the ExtenZe® trademark. Biotab only agreed to sell its goods to Beamonstar and Bolanos, and only agreed to do so at the discounted prices that were given, in reliance upon Defendants' representations, promises and warranties that Defendants would not: (i) market and re-sell ExtenZe® branded goods to anyone who was not engaged in the adult entertainment industry in the United States, or in attendance in adult entertainment industry events; (ii) represent to others that there was any affiliation between Defendants and Biotab or Biotab's ExtenZe® goods, whether as a distributor, dealer, agent, affiliated business, or manufacturer; and (iii) use Biotab's proprietary marketing materials in selling ExtenZe® branded products.

G. Notwithstanding Defendants' Beamonstar's and Bolanos' representations, promises and warranties, continuing through the filing of this action and thereafter, Defendants Beamonstar, Bolanos, and BPI marketed, advertised, solicited the sale, and sold goods, both in interstate commerce and internationally, bearing the ExtenZe®

trademark to persons other than those engaged in the adult entertainment industry in the United States or in attendance in adult entertainment industry events, including doing so to the public at-large via the internet, general advertising, sales solicitations, and direct sales marketing. Defendants have done so using the website, amongst other websites, www.beamonstar.com, and by selling ExtenZe® branded goods on the websites of internet stores, by telephone sales, by mail order, and at trade shows and promotional events throughout the United States.

   H. In marketing and selling ExtenZe® branded goods, Defendants Beamonstar, Bolanos, and BPI have represented to others that there was an affiliation between Defendants and Biotab and/or Biotab's ExtenZe® goods, including that Defendants were a distributor, dealer, agent, affiliated business, or manufacturer. Representative of such statements are: (1) in December 2008, Defendant Bolanos was quoted publicly as saying that Biotab's product, "Women ExtenZe" has been planned for a long time and that "we wanted to wait until we found a formula worth distributing under the ExtenZe brand," even though Defendants had utterly nothing to do with the development, planning, formulation or bringing to market of such product; (2) Bolanos' public statements and statements on Defendants' website that "BeaMonstar is the exclusive nationwide distributor of ExtenZe," even though Defendants were never an authorized "distributor" of ExtenZe branded goods, let alone "the exclusive nationwide distributor of ExtenZe" goods; and, (3) statements on Bolanos' Facebook page that he was present as a supervisor on the set when Ron Jeremy filmed the first ExtenZe® commercial, though that statement is entirely false.

I.    In marketing and selling ExtenZe® branded goods, Defendants Beamonstar, Bolanos, BPI have used without authorization Biotab's proprietary marketing materials, including ExtenZe® branded packaging, advertisements, promotional photographs and likenesses.

J.    As the result of Defendants' conduct in selling ExtenZe® goods in a manner contrary to Defendants' agreement with Biotab, Biotab refused to sell any more of its goods to Defendants and demanded that Defendants cease making all statements suggesting any affiliation between Biotab and Defendants. Nevertheless, Defendants continued their statements and marketing asserting there to be an affiliation and continued to advertise the sale of ExtenZe® branded goods, market the sale of ExtenZe® branded goods, sell ExtenZe® branded goods, use Biotab's trade dress in selling ExtenZe® branded goods, and use Biotab's marketing materials in selling ExtenZe® branded goods, both in interstate commerce and internationally.

K.    After Biotab ceased selling its goods to Defendants, Defendants knowingly acquired unauthorized and/or counterfeit goods bearing Biotab's ExtenZe trademark and trade dress from others, including Bio-Nutraceuticals, Inc., Vincent Schuman, dba V-Max and For Life Products, and/or Starco Impex, Inc., dba Wholesale Outlet. Defendants re-sold those goods to others as if they were authentic, authorized ExtenZe branded goods. As well, Defendants offered for sale and sold ExtenZe® branded goods at prices that are below the prices at which Biotab sold goods to Defendants.

L.    Defendants' conduct alleged herein constitutes unfair and deceptive packaging and labeling, as proscribed by 15 USC 1452 and 1453. Biotab is informed and

believes and thereon alleges that the goods being sold and offered for sale by Defendants also constitute misbranded consumer commodities, as defined by 21 USC 331, in violation of the Federal Food, Drug and Cosmetic Act and are proscribed unfair or deceptive acts in commerce, in violation of the Fair Packaging and Labeling Program.

M. Defendants' conduct alleged herein constitutes trafficking in counterfeit goods, as proscribed by 18 USC 2320.

N. In or about December 2008, when Defendants became aware that Biotab was about to launch a new product line, called "Women ExtenZe®," Defendants surreptitiously registered the internet domain name, www.womenextenze.com. Defendant Bolanos thereafter promised to surrender that domain name to Biotab and, on several occasions thereafter when Defendants sought to purchase goods from Biotab, Biotab so demanded its surrender and inquired as to when Defendants would be formalizing the transfer of the domain name to Biotab, each time being reassured by Defendant Bolanos that he would do it shortly. Not only did Defendants never transfer the domain name to Biotab, but they continued to use the website in interstate commerce, to sell to the general public ExtenZe® goods and other goods that are competitive with Biotab's goods. Defendants' true intent in registering that domain name and in using it as they have was to reap windfall profits from a domain name that infringes upon Biotab's trademark and is dilutive of Biotab's famous mark.

O. In operating the internet domain name, www.beamonstar.com and other domain names, Defendants have used meta tags or hidden code visible to Internet search engines but invisible to others, containing Biotab's registered mark, ExtenZe®, as a means

of fooling Internet search engines, confusing prospective customers, and diverting attention and commerce from Biotab's website and the true origin of Biotab's ExtenZe® branded goods to Defendant's website, address and/or telephone number. In connection with the use of Biotab's registered mark and in the marketing of goods similar to Biotab's ExtenZe® branded goods, Defendants also engaged in a campaign of eliciting other websites to link or point to Defendants' website(s) with the objective of manipulating the Internet search engine rankings of Defendant's website(s) over Biotab's site.

P. In engaging in their wrongful conduct Defendants perpetrated unfair methods of competition and unfair or deceptive acts or practices in violation of California Civil Code Section 1770, including by: passing off goods as those of another; misrepresenting the source, sponsorship, approval or certification of goods; misrepresenting the affiliation, connection or association with, or certification by, another; and, using deceptive representations of geographic origin in connection with goods.

Q. On the www.beamonstar.com website and on the www.womenextenze.com website operated by Defendants, Defendants solicited others to sell and to advertise for sale what is purported to be Biotab's ExtenZe branded goods supplied by Defendants and on behalf of Defendants, and they offer compensation and/or discounts for doing so, in violation of California Business and Professions Code Section 17047.

R. Defendants Beamonstar, Bolanos and BPI have knowingly manufactured or acquired, distributed, sold, and offered for sale to the general public and to businesses for resale goods bearing a counterfeit mark of Biotab's ExtenZe® trademark, and/or using a spurious designation that is identical with, or substantially indistinguishable from, Biotab's

trademark; and, they have engaged in other conduct with the foregoing objectives. Defendants did so, in part, through several purchases of goods from Bio-Nutraceuticals, Inc. ("BNI"), Vincent Schuman, dba V-Max and Company and also dba For Life Products, and Starco Impex, Inc., dba Wholesale Outlet.

S. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy or colorable imitation of Biotab's prior registered trademark, and such acts are likely to cause confusion or mistake or to deceive the public, in violation of 15 U.S.C. § 1114(1).

T. Defendants' acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection or association of the parties and/or to misrepresent the nature, characteristics, qualities or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C. § 1125(a).

U. Biotab's federally-registered ExtenZe® trademark is a famous mark with a distinctive quality, thereby qualifying said mark for protection from dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

V. Defendants' unauthorized use of the Biotab's trademark has, and will continue to, lessen the capacity of the famous and distinctive Biotab's mark to distinguish Biotab's goods and services from those of others.

W. As the proximate cause of Defendants' conduct, Biotab sustained damages in the amount of Five Million, One Hundred Thousand Dollars ($5,100,000). Pursuant to 15

USC §1117, each Defendant is jointly and severally liable for all damages suffered by Biotab that was proximately caused by the acts complained of herein

X. Defendant Bolanos is a "person" within the meaning of the Racketeering Influenced and Corrupt Organizations Act. Beamonstar and BPI each were an "enterprise" through which a pattern of racketeering activities described herein was conducted and through which income was derived and used in operating the enterprises.

Y. Defendants engaged in a pattern of racketeering activity, subjecting them to direct liability under 18 USC 1962(d) and that the individuals and the senior management and certain other employees of the corporate Defendants knew of and/or participated in the racketeering activity, such that the racketeering activity was the corporate policy and practice of the corporate Defendants (Beamonstar and BPI).

X. Defendant Bolanos knew of and participated in the racketeering activity and conspired with the corporate Defendants (Beamonstar and BPI), not just as employees of the corporate Defendants, but also, in their individual capacities, particularly inasmuch as such individual Defendants had an independent interest and stake in achieving the illegal objectives of the racketeering activity.

Y. Defendants' conduct was interrelated, part of a common and continuous pattern of fraudulent schemes and practices and was perpetrated for the same or similar purposes, thus constituting a "pattern of racketeering activity," as defined in 18 USC 1961(5).

Z. Defendants engaged in the pattern of racketeering activity complained of herein through certain enterprises, as is defined in 18 USC 1961(4).

AA. By engaging in the conduct described herein, each of Defendants unlawfully, willfully and knowingly conspired to engage in conduct violative of the provisions of 18 USC Sections 1962(b), and 1962(c), in violation of 18 USC 1962(d).

BB. In furtherance of their wrongful, fraudulent conduct, Defendants knowingly and willfully used the United States Postal Service, federally regulated media, and/or and federally regulated telephone, wire and internet services to communicate, and did so in repeated violations of 18 USC Sections 1341 and 1343, each of which services is an instrumentality of interstate commerce, and was used by Defendants to engage in interstate commerce as described herein.

CC. As the proximate result of Defendants' conduct, Biotab has sustained damage in the amount of Five Million, One Hundred Thousand Dollars. As a further element of Biotab's right to recover damages, Defendants' conduct herein justifies the recovery by Biotab of treble said damages.

DD. At all times relevant hereto, an economic and business relationship existed between Biotab and its actual and prospective customers, including, but not limited to, wholesalers, retailers, and the general public.

EE. Defendants wrongfully interfered with, interrupted, and attempted to interfere with Biotab's economic relationships with its actual and prospective customers. In fact, by acting they have, each of the Defendants derived, and attempted to derive, a pecuniary benefit from their conduct, to Biotab's detriment, and the aforesaid existing economic relationships were frustrated and obstructed. Defendants knew, or should have known, of said economic relationships.

FF. Defendants' actions alleged herein were without justification or excuse, and wrongfully, corruptly and intentionally interfered with, or attempted to interfere with, Biotab's existing and potential economic benefit and relationships.

GG. As the proximate result of Defendants' conduct, Biotab sustained damage in the amount of Five Million, One Hundred Thousand Dollars. Defendants' interference with Biotab's economic advantages, both existing and potential, was willful, intentional, malicious and fraudulent. The interference was done with the advance knowledge of, approval or ratifications by Defendants, and each of them. By reason of such conduct, Defendants have denied Biotab of its legal rights and property, thereby entitling Biotab to a recovery of punitive and exemplary damages.

HH. During the time in which Defendants purchased goods from Biotab, Defendants, through the statements of Defendant Bolanos to persons affiliated with Plaintiff, intentionally made to Plaintiff false representations regarding material facts and false promises which Defendants knew to be false, and also concealed from Plaintiff certain material facts, upon which Defendants knew Plaintiff would rely. The false representations, false promises, and concealments of material fact by Defendants included, but are not limited to: (1) Defendants would not market and re-sell ExtenZe® branded goods to anyone who was not engaged in the adult entertainment industry in the United States or in attendance in adult entertainment industry events; (2) Defendants would not represent to others that there was any affiliation between Defendants and Biotab or Biotab's ExtenZe® goods, whether as a distributor, dealer, agent, affiliated business, or manufacturer, or otherwise; (3) Defendants would not use Biotab's proprietary

marketing materials in selling ExtenZe® branded products; (4) Defendant Bolanos promised to surrender to Biotab the domain name, www.womenextenze.com. However, the true facts were that: Defendants did market and re-sell ExtenZe® branded goods to persons who were not engaged in the adult entertainment industry in the United States or in attendance in adult entertainment industry events; Defendants did represent to others that there was any affiliation between Defendants and Biotab or Biotab's ExtenZe® goods, including as a distributor; Defendants did use Biotab's proprietary marketing materials in selling ExtenZe® branded products; and, Defendants never surrendered and transferred to Biotab the domain name, www.womenextenze.com, and Defendants even have been using that domain name to sell their own products, to the exclusion of ExtenZe branded goods.

II. Biotab did not know of the falsity of Defendants' representations and believed them to be true, were reassured by Defendants of the truth of truth of those representations and, therefore, justifiably relied upon them in taking the actions herein alleged, to Biotab's detriment. Defendants engaged in such conduct, in part, to induce Biotab to sell goods to them, to sell goods to Defendants at a discounted price, to defer asserting or enforcing its rights against Defendants, and so as to enable Defendants to profit.

JJ. As the proximate result of Defendants' conduct, Plaintiff has sustained damage. Defendants' wrongful conduct alleged herein was willful, intentional, malicious, oppressive and fraudulent, and was done for the purpose of depriving Biotab of its just money, property, and/or legal rights, or otherwise of causing injury to Biotab. Said

conduct was despicable and subjected Biotab to unjust hardship, so as to justify an award of exemplary and punitive damages.

KK. Biotab sustained damages as the direct and proximate result of Defendants' conduct in the amount of Five Million, One Hundred Thousand Dollars ($5,100,000.00). As a further element of Biotab's right to recover damages, Defendants' conduct herein justifies the recovery by Biotab of treble said damages. Based upon the nature of Defendant's conduct and considering Defendants' means and circumstances, an award of exemplary and punitive damages in the amount of One Million Dollars ($1,000,000.00) is justified.

LL. The conduct of each of the Defendants herein constitutes the willful and malicious injury to another entity or to the property of another entity, as such acts are defined and interpreted under 11 USC 523(a)(6).

## ORDER FOR JUDGMENT

Wherefore, judgment is ordered and shall be entered in favor of Plaintiff Biotab Nutraceuticals, Inc. as against Defendants Beamonstar, LLC, Jeffrey Levi Bolanos, and Beamonstar Products, Inc., jointly and severally, as follows:

1. A permanent injunction is hereby entered, prohibiting each of the Defendants, and their members, directors, officers, employees, agents, representatives, successors, assigns, and all other persons or entities acting for the benefit of, on behalf of, or in concert with, any of the Defendants from:

    1.1 In any manner, using Biotab's trademark, "ExtenZe®," or any colorable imitation thereof;

1.2 In any manner, using any trademark that imitates, is confusingly similar to, or is in any way similar to or a variation of, Biotab's trademark, "ExtenZe®;"

1.3 Engaging in any act that tends to lend the impression to consumers that Defendants' goods and services are, in any way, of the same origin as, related to, or a variation of, Biotab's goods and services associated with the trademark, "ExtenZe®;"

1.4 Importing into the United States any goods purporting to be Biotab's goods or goods associated with, or intended prospectively to be associated with, Biotab or Biotab's ExtenZe® trademark;

1.5 Manufacturing or causing to be manufactured, advertising, marketing, offering for sale, selling, distributing or delivering any goods purporting to be Biotab's goods or goods associated with, or intended prospectively to be associated with, Biotab or Biotab's ExtenZe® trademark;

2. Each Defendant is ordered, pursuant to 15 USC § 1118, to deliver up for destruction all advertising, promotional materials, signs, packaging, labels, containers, or other materials within their possession, custody or control bearing any trademark that infringes upon Biotab's ExtenZe® trademark, as well as all plates, matrices, tools, dyes, electronic files, and any other means of making same.

3. Pursuant to 15 USC §1117, each Defendant is jointly and severally liable for all damages suffered by Biotab that was proximately caused by the acts complained of herein, in the sum of Five Million, One Hundred Thousand Dollars ($5,100,000.00), which damages are trebled to total Fifteen Million, Three Hundred Thousand Dollars ($15,300,000.00).

4. Biotab shall recover its reasonable attorney's fees, in the amount of $108,870.56.

5. Biotab shall recover its costs of suit herein.

DATED: _____, 2011

Stephen V. Wilson
United States District Judge

ORDER FOR ENTRY OF JUDGMENT